Afternoon, you may be seated. Judge Chin and I are very fortunate to have with us Judge Meyer of the District of Connecticut.  Just counsel, indicate your presence for Leon Michael Schroeter. Good morning, Matthew Whitaker. And Amicus. Thank you. I think that what we'll do is we'll begin with you and then go to Ms. Halligan. And then we'll begin with you, then go with Ms. Halligan, and then, does that make sense? Okay. Okay. Yes, your Honor, the Petitioner Leon Schroeter was arrested in 2012 on a charge of sexual assault. Involving a minor, a person above the age of consent in the state of Connecticut. After he was arraigned and during the trial, the Connecticut Superior Court sustained a motion for summary judgment on one of the counts. And the jury subsequently acquitted the petitioner of all the other charges. He was subsequently placed in removal proceedings by the Department of Homeland Security. During the removal proceedings, the petitioner conceded removability. He was never charged in removal proceedings with being inadmissible. Being inadmissible in having been arrested or committed a crime or a felony. He was charged as being removable as a person who had overstayed his visa. He conceded removability and subsequently applied for relief under Section 245A, which is to adjust his status as a result of a petition that was filed on his behalf by his US citizen spouse.  Did he challenge his inadmissibility? He was never charged with being inadmissible. He was- Sorry? Did he challenge his inadmissibility before the agency? Your Honor, he was never charged with being inadmissible. He was charged with being removable. The two different tests. Inadmissibility would have been under Section 237. Removability was under Section 212. And 212, removability was just that he was a person who had overstayed. He was never charged with being inadmissible. Which goes to the heart of the arguments in that his application was denied because he was, well, the immigration judge during the hearing determined that he was now inadmissible because he had made a misrepresentation during the hearings. And now found him inadmissible, which required him to apply for a waiver. Isn't it a problem that you didn't, from what I can tell, and correct me if I'm misunderstanding, you didn't raise the argument about materiality? Your Honor, it would have been, but it was included in the arguments by the agency, by the Board of Immigration's appeal, when they referred to it and brought up the issue of materiality. Unfortunately, it is true that when they filed the brief to the agency, the Board of Immigration's appeal, that wasn't raised. Other issues were raised, but materiality was not raised by the petitioner in his brief. But it is properly before this court because it was raised by the agency, the Board of Immigration's appeal. So, getting back to the, so. Let me just ask about the immigration, I'm over here, about the immigration judge's inquiry into the background facts of the trial. Was that proper? Was it fair game for the immigration judge to do that? There were two aspects to what the immigration judge did, Your Honor. The first was the immigration judge looked at the internet to contradict. Before we get to that, just in terms of considering the adjustment of status. Was it or was it not proper for the immigration judge to look in to essentially make an inquiry into what happened with respect to this sexual contact or possibly a rape, first degree sexual assault, as charged? Wasn't it proper for the immigration judge to make that inquiry in the first place? Congress gives the agency, gives the immigration judge discretion. But the discretion, to answer Your Honor's question, for the immigration judge to have considered legal sexual conduct was not proper because it was not material. And that infected the immigration judge in terms of his- Was the immigration judge, though, permitted simply to make an inquiry into what were the facts involved in this very serious charge for which your client was acquitted? The immigration judge had the discretion to ask anything he wanted. And indeed, to go into the facts of the case. But the immigration judge did not have the authority to go beyond and substitute his own opinion for an acquittal, or for the state of Connecticut. The state of Connecticut deems that a person above the age of 16 has the right, or is capable of consent. So a person cannot be guilty of having, of sexual assault, even though the person is a minor. This is what Connecticut, in their wisdom, has made. The immigration judge, in denying the application, says that, and I'll quote, the sexual conduct involving a minor, even though it did not result in a conviction. But in this case, the immigration judge didn't essentially set out to try to figure out whether your client had engaged in lawful sexual conduct. The immigration judge's inquiry was directed towards trying to figure out if your client had committed the charged crime. I think as the immigration judge was free to do, right? An IJ is free to look at that, even despite the acquittals, free to look at the facts and try to figure out, well, is there at least maybe by a preponderance evidence that in fact he's committed this. Crime, even if the jury in the criminal case was turned to acquittal. No, your honor, the immigration judge is not permitted to make a collateral inquiry as to the underlying charge. He can in examine the conduct, but not as to whether or not the respondent committed an offense when that act happened. But the immigration judge can consider it. But he could make an inquiry to try to figure out if there was a forcible sexual assault, right? No, that is not what the immigration judge's, that is for the state of Connecticut. That is not what the immigration judge's authority involved. In exciting his question, it wasn't to decide whether or not the respondent, the petitioner, had committed an offense. It's whether or not the respondent's actions were appropriate. Was there anything other than MP's age that was determinative for the IJ or the BIA concerning whether the conduct was offensive? No, the main issue for the IJ was that this was an act involving a minor. There was no issue, and indeed the facts of the case, there were no issues of force or of actual, of the actual rape act. It was touching of a minor. And that was all that the, that was enough for the court and for the agency to rule that. She must have complained to the police at some point, right? Because there was a prosecution brought. There was a prosecution brought. I mean, she was not admitting consent, I assume. Otherwise, there would have been no criminal charges brought. I was not his criminal attorney, and I don't think that whatever the victim or the alleged victim in this case reported. Well, I mean, this is not a case where you have consenting adults doing, engaging in sexual conduct in the privacy of their home, in that sense. This is a case where there is a minor, where she may or may not have given consent, but it led to criminal charges, and then an entire trial. So, was the immigration judge permitted to probe those facts, to find out what happened? No, Your Honor, because that was what the state of Connecticut's function was, to, there was a complaint made by this minor. So you're saying once there's an acquittal, that's it, the IJ can't look behind the acquittal at all? I'm saying that once there's an acquittal, the IJ cannot look to retry the case and decide that. Well, there are certain circumstances when a judge can look at acquitted conduct. In sentencing, a sentencing judge can consider acquitted conduct. Even though a defendant was found not guilty, the conduct still can be relevant to sentencing. Why couldn't the conduct here be relevant to some of the issues before the IJ, even though there was an acquittal? And that would have been a good argument if there had been force involved or an actual rape. But this, there wasn't any force involved in this. This was, he was charged with having contact with this minor. So if the underlying case had involved force or some other act of violence, then the immigration judge- The IJ probe whether there had been force or a lack of consent. I would, I would think to do that would be to open up a whole, a whole different dimension to the IJ's authority. Because it's more or less asking the IJ to re-litigate an issue that has already been litigated. So, for instance, if the state of Connecticut decided to drop the charges against the respondent, the IJ can then inquire as to, well, even though they didn't pursue charges against this respondent, I still think that he is a bad person or he's not deserving of discretion because of what they did, even though the charges were dropped. I believe that that would not be appropriate for the IJ to consider. Thank you. Thank you. Chief Judge Katzman and may it please the court. Caitlin Halligan on behalf of amicus, pursuant to this court's order in support of neither party. This court requested that amicus address the question of whether petitioner's misrepresentation was material, and whether an immigration judge may deny adjustment under 1255A for legal sexual conduct, including addressing the amendments identified in the Ninth Circuit's case in Yepes Prado. Let me start, though, by briefly touching on a question that you did not ask us to address, which is the question that Judge Chin and Judge Meyer, I believe, have been raising. Which is, what about whether or not the petitioner committed unlawful sexual conduct? In other words, was the IJ properly authorized to inquire into whether there was some proof, albeit not beyond a reasonable doubt in light of the acquittal of the charges in Connecticut. But that there was non-consensual sex. The woman at issue here was a minor, but above the age of consent. And so if it was consensual, as my friend here explained, there would obviously have been no crime. We did not squarely address that question because it was outside the scope of the amicus order. But I believe at page 28 of our brief, we lay out some cases which do touch on this question. There are cases that the government has briefed which allow for evidence of criminal conduct to be considered where that conduct did not culminate in a final conviction. Our reading of those cases is that they did not involve an acquittal. So the question of whether an immigration judge may consider conduct in the face of an acquittal was not presented. We did identify some cases, almost all of which are unpublished, which cut the other way. But simply put that out there for the court's consideration. Let me turn to the question that you did ask, which is whether or not the immigration judge may consider legal sexual conduct. You have to begin, I believe, with the statute, 1255A states that the status of an alien, quote, may be adjusted by the Attorney General in his discretion. That's a very broad grant of discretionary authority. It contains no explicit restrictions. And in fact, the US Supreme Court, in considering a very similar provision, concluded that that authority was, quote, unfettered. That could resolve the question before the court if the court was inclined to take the court's analysis in Yang at face value. In our view, the question is a bit more complicated than that, although a hard question, I believe, as I think our brief suggests. The Ninth Circuit, in examining this question, looked to the three amendments that this court pointed to in its order and was of the view that these amendments evinced Congress's intent to preclude consideration of legal sexual conduct in making immigration decisions. The Ninth Circuit did not expressly invoke a constitutional avoidance canon or a clear statement rule. But it did suggest that allowing consideration of such activity had some constitutional dimension, noting that such an inquiry would be highly intrusive and that it related to an important aspect of personal identity. And cited the Supreme Court's decision in Kent, in which the Supreme Court looked at a provision regarding issuance of passports by the Secretary of State that conferred very broad, unbridled discretion. And the court said that there would be reason to read that to imply some constitutional constraints. So the Ninth Circuit suggests that there may be, I believe, some concerns of a constitutional magnitude, but does not expressly read the statute in light of those. Instead, the Ninth Circuit turns to three amendments. We've laid out in our brief why we believe that they are perhaps not as probative as the Ninth Circuit believed them to be. And the key point here is that all three of those amendments, the one about sexual deviation, polygamy, and adultery, concerned eligibility factors, and the precedent of this court, as well as other circuits, and Yang from the US Supreme Court have held that when Congress amends an eligibility factor for purposes of an immigration decision, that a determination that a factor is not relevant does not, at the same time, preclude consideration of that same factor in making a discretionary determination. Does not necessarily, right? Does not. There could be times when Congress, when you would look at Congress's intent in changing an eligibility factor and say, Congress felt so strongly about this that we can also assume, I think, as Yepis Prado assumed, because it was looking at a discretionary decision there, that Congress would not have wanted this same concern being taken into consideration at the discretionary stage. That's certainly the Ninth Circuit's view, and I think it does shed some light on whether Congress thought it was appropriate or perhaps could raise constitutional concerns for such conduct to be considered. But I would note that Yang and Jane from this court do say that as an interpretive matter, when Congress amends an eligibility factor that does not directly bear on the question of whether Congress also intends to preclude consideration. That may be because with respect to the eligibility factors, that's generally an on-off switch, right? So if you are not able to meet the eligibility factor, you may not move forward in the process. The discretionary determination allows for a weighing of a range of factors. And so Congress may- Including legal sexual conduct? Well, that's the question, Your Honor, and- I gather you don't think that the amendments show that Congress intended to eliminate consideration of all legal sexual conduct, at least in the discretionary part. I think that given the precedent, that it is difficult to take that away from those amendments. On the other hand, though, I think that there is another interpretive principle that may properly bear on this question, which is whether or not allowing an immigration judge to consider legal sexual conduct. Take, for example, sexual orientation. The case here, I think, is more complicated because it involves conduct that I believe under the decisions that have been handed down following Lawrence is not itself constitutionally protected. But if you had conduct that was constitutionally protected or some other classification, for example, race or religion, I think the question is whether or not this court can and should construe what looks like a very broad grant of authority to reflect Congress's intent to prohibit consideration of such factors. And Zdivtas, I think, suggests an analysis exactly along those lines. So in that case, Congress wrote a statute regarding, if I may continue, Your Honor, regarding detention of someone. There was no restriction that was included in the statute at all. The statute said that an individual, quote, may be detained beyond the removal period. And what the Supreme Court said is that although the word may, may be detained, suggest discretion, it is not necessarily unlimited discretion. And if reading some limitation into the statute that avoids the risk of bumping up against a constitutional limit is necessary, then the court can do so. That's precisely what it did in Zdivtas. And in Clark, the Supreme Court looked at the same provision. And it said that a statute is not a chameleon. So even if, in a particular instance, there may not be a constitutional concern that is raised by applying a statute in, in fact, an unfettered and extraordinarily broad way, that if in other circumstances, such concerns would be present, you have to read the statute the same way, no matter what the specific instance is in which it's presented. And so, if the court applies that principle, and if the court also concludes that following Lawrence, there is much legal sexual conduct, not illegal sexual conduct, that would, in fact, be protected, and that an immigration judge would be precluded from making even a discretionary determination on that basis, then I think it would be possible to read that broad grant of authority in 1255A, as the Supreme Court did in Zdivtas, to include an implied limitation. That would be the case, even though the conduct at issue here would not be entitled to any constitutional protection, so that there's a uniform reading across circumstances. And I wonder if you might just briefly, the last part of your brief talks about the materiality issue here. You've already referred us to some of the cases there. Does, if we were to assume that it was proper for the IJ to ask about the underlying facts here, would we, and the underlying facts happen to include reference to some protected conduct, constitutionally protected sexual conduct, does that mean that the inquiry of the IJ or that, I should say, the misrepresentation that occurs is necessarily immaterial? Well, I think this is a very difficult case because you have here, I believe, possibly, I think it's difficult to tell from the record whether the immigration judge was attempting to inquire about whether there was some evidence of non-consensual conduct or was simply saying that the age difference made the conduct such that he did not think that a waiver was appropriate. You have, arguably, here both illegal conduct and legal conduct. And so I think you would need to parse that out. One option, I believe, would be to send it back to the BIA with instructions to remand to the immigration judge for some clarification on whether what he is considering or intended to consider was some evidence that there was non-consensual conduct or whether, in fact, he intended to consider legal sexual conduct above the age of consent consensual and that the age difference was what led him to his decision there. If the court were to do that, I expect it would need to resolve the question of whether or not consideration of acquitted conduct was permissible if either the court decided that that was what the IJ did or if it sent it back and the IJ said, yes, that's what I meant to do. The record is fairly sparse. Obviously, the woman, neither the woman nor the police officer were called to testify. There was simply a recounting of first the newspaper article, then the transcript of the criminal trial. But I think that that's not clear from the record. With respect to whether or not the under the Supreme Court's cases and Monter from this court, that the question of materiality requires that the misrepresentation be something in terms of its subject matter that would be disqualifying. A false representation about something irrelevant, I think both Monter and Cungus suggest, doesn't qualify because it's not material. Suppose the crime in this case, the charged crime, were bank robbery. Yes. And the defendant was acquitted of the bank robbery. And his defense at trial was, I didn't rob the bank, but I was inside the bank doing or just outside the bank doing a First Amendment protest. And he's acquitted and he goes to his immigration hearing in similar circumstances. And there he says, I wasn't near the bank. I was in France. It strikes me that if the immigration judge is permitted to undertake an inquiry into the underlying circumstances of the charges there, I know you say that's an open question, but if he is, then his decision about the misrepresentation and its materiality doesn't have to do with the fact that the immigrant was engaged in First Amendment-protected activity. It has to do with the fact that he's looking, the immigration judge is trying to look at whether the immigrant is being truthful as to the facts relating to the disqualifying aspect, which is essentially. I believe, I believe that that's correct. And the last piece of what you said, Your Honor, the facts relating to what he might be disqualified for is the limiter that Monter and Congas put on the inquiry because that's what gives the word material some meaning. Otherwise, any misrepresentation, whether relevant to the determination that the IJ is making or not, would qualify, which it may, for example, for good moral character, where there is no materiality restriction. And so I think that that's. So the only reason, right, that we get into the situation of inquiry being made into these facts about sexual conduct is because there have been a prior criminal charge, and it would be a very different matter if we had a case in which essentially the immigration judge IJ just takes the bench and starts talking about, asking somebody about their sexual practices. I think that that's correct, although I think that that also leaves on the table the question of whether consideration of conduct for which there has been an acquittal, and that seems to be specifically the question, is something that is permissible. Because this Court's order asked us to brief the question of whether legal sexual conduct is something that could be considered, we did not address that issue in any detail. One last specific point, if I can, I'm happy to address any other questions the Court might have. I believe it was you, Chief Judge Katzmann, asked whether or not the petitioner had raised the question of materiality, and it may be that his counsel has set forth a view on that. I would direct the Court on that question to a couple of pages in the record. AR 792 to 798, which is a brief regarding the admissibility of the transcript, which I don't believe directly addresses materiality but touches on these issues. And then the question of materiality specifically is raised by the IJ, by Petitioner's counsel, at AR 216, 219 to 20, and 276. MR. COOPER 276? MS. COOPER Yes, Your Honor. 216, 219 to 20, 276. That's in the oral argument, not in a written submission, Your Honor. MR. COOPER Excellent. Thank you. MS. COOPER The Court has any other questions? MR. COOPER I'd just say that the amicus brief was extremely helpful to the Court and really a model. And I think specifically, for example, the way in which the amendments were analyzed was of great help to this Court and would have been of great help to the Ninth Circuit had they had the benefit of it. So we appreciate it. MS. COOPER Your Honor, those thanks go to my colleagues who turned up that work. But thank you. MS. COOPER Good afternoon again, Your Honors. Thank you for having me here today and representing the government. Petitioner in seeking relief from removal in the form of adjustment of status has a burden of showing that he is clearly and beyond doubt entitled to be admitted to the United States. Petitioner has failed to meet that burden. Petitioner, having been sworn under oath in immigration court, misrepresented the nature of his relationship with a minor and specifically the existence of sexual conduct. Conduct that petitioner fully admits himself was morally distasteful and offensive and was not simply a private matter but ultimately gave rise to criminal proceedings. And that is one of the critical aspects of this case. I believe, Judge Meyer, you were asking earlier whether or not the I.J. was permitted to engage into the facts behind the criminal background. And it's government's position that the I.J. was properly permitted to do so and also required to do so. If you look at Form I-485, which is the application for adjustment of status, there is a question, Part III, Question 1B. Have you ever, in or outside of the United States, been arrested, cited, charged, indicted, convicted, fined, or imprisoned for breaking or violating any law or ordinance, excluding traffic violations? And petitioner checked yes. As a result, DHS counsel then did its due diligence and probed to see what was the basis for the criminal charges and what led to petitioner being in 15 months pre-trial confinement for allegations of first-degree sexual assault or forcible rape. As a result, the government then obtained documents pertaining to the criminal trial. On June 9, 2015, DHS submitted an excerpt from complainant's testimony at the criminal trial. While petitioner's counsel objected, the I.J. permitted the admission but stated, these are just accusations, okay? This goes to the fact that even though the immigration judge was not permitted to look to see whether or not he was criminally convicted of a crime, whether or not it was probative of his desirability to remain in the United States. In response to the record, in your view, indicate whether the immigration judge was probing whether this was criminal conduct or whether he was probing whether this was distasteful conduct, and does it matter? I don't think the record is explicitly clear just on the nature of a transcript from proceedings, what exactly his purpose was. For the most part, he did leave it to the parties to reconcile. Based upon my reading of the decisions, I think he was looking to see whether or not there was maybe some unlawful behavior and whether or not that unlawful behavior reflected his desirability and how he conducts himself in society, especially where you have accusations of a 48-year-old having sexual relationship with a 17-year-old. And as part of that too, I think the I.J. took into consideration whether or not, yes, she provided consent, but also his role in relation to her. He was a friend of the family's who came over on numerous occasions, even when the parents weren't home, according to various parts of the record, and whether or not he may have been in a supervisory position, which may have changed the facts whether or not her consent, if it was given, whether or not it was fully intended or if she was in a more susceptible position. Now, the I.J. repeatedly said he didn't want to do a re-litigation of the whole criminal case, and then he ends up, as I'm recalling the record, essentially saying, you know, let Mr. Schroeder get on and talk about why he was acquitted. That is correct, Your Honor. And so when the evidence was first submitted, which was from DHS, the excerpt of the complainant's petitioner's counsel, the acquittal order, and the jury verdict, they had a discussion, and petitioner then assumed the stand, and petitioner's attorney at the time then initiated discussion of what transpired at the criminal proceedings by asking his opinion as to why he had been acquitted. At that point in time, he then began his series of lies where he said it was a completely made-up story, nothing had happened. Had he had come on to the stand and said, you know, there were these very serious allegations against me, it was not forcible rape, but was consensual conduct, it may have been a different story. And so the I.J. then gave petitioner several opportunities, and DHS counsel gave petitioner several. It wouldn't have been a different story, right? Because I think you've been telling us that just the fact that you have a 48-year-old engaged in these, as you call them, distasteful relations with the 17-year-old, that was enough by itself to deny discretionary relief, right? Yes, correct. In the matter of discretion, I should clarify what I meant with respect to the inadmissibility finding. And so it's the lie and the conduct in conjunction with each other, but ultimately the agency still could have denied the adjustment of status application just based on the conduct alone. I see. So does an I.J. have essentially free-ranging discretion to determine such and such kind of activity is distasteful or reflects bad character? It's a government's position that is largely just in the nature of a discretionary decision. It's a case-by-case basis, factual inquiry. And what we keep on coming back to here are the criminal proceedings and the seriousness of the allegations. I guess my question, though, really is apart from these facts here, if you have, is an I.J. at liberty to essentially inquire into somebody's sexual practices and find them to be distasteful? The government can in certain situations, for instance, with respect to marriage fraud cases and the bonafide of marriage, they can investigate into it. But the government doesn't But in this kind of situation where there's an adjustment of status or a waiver of inadmissibility determination, is it your position that an I.J. can essentially just kind of fish around for, you know, odd, bizarre kind of sexual practices? It's not the government's position that the I.J. or the agency can generally do it. It's more when there's a cause of concern, such as the existence of a criminal record, or if there is some other information that was present in the application or record, which would have directed him in that direction. I'm sorry. Go ahead. If you had, for example, sexual conduct involving bondage and dominance between two consenting adults, is that something that could be an object of concern from an I.J.? I don't think I can officially represent a government position on that. But I think, again, it would depend upon the context in which such information came to light. But freedom of expression through sex can be largely protected by the Constitution. But in such cases where there is a discretionary decision, then the agency can consider evidence as it pertains to the context. But I can't exactly answer that hypothetical, Your Honor. So the differences between the situation where there's a 17-year-old and a 48-year-old is, what is it, in your view, a statute? In the government's? What is it that makes, what differentiates that situation from a situation where you're looking into, an I.J. is looking into bondage and dominance? I think, again, it's because it was no longer a private matter. It was something that gave rise to criminal proceedings. It was the fact that there is a substantial age difference. It was the seriousness of the allegations against him. It was the fact that he was in a supervisory position to a certain extent. There are a number of factors that come into play. They're not merely probing to determine a person's sexual preferences or whether or not the person has any sexual fetish, but to see what were these facts that underlied the criminal proceedings. And even though the government and the criminal proceedings had not been its burden of whether or not he had committed the crime beyond a reasonable doubt, whether or not there was still something suspect that had occurred. I gather, I think I read this in your brief. It's not the government's position that he should be denied adjustment of status because of the underlying conduct, or is it? Or not by itself, in any event. So that's, it's difficult in the extent to which his adjustment of status application was adjudicated. It's not very often where you see in... In other words, let's say he didn't lie. He came in and he said, I admit that I had sexual contact with a 17-year-old, but it was consensual. I can't speculate as to what the agency would have done, but in adjudicating the 212I waiver, which he was required to seek, it did consider both the conduct and the lie. So that being said, there is a possibility that the agency would have considered the conduct alone, but what made it more severe in this case was that he came in and he was untruthful. I can't parse whether or not you take away one of the factors, what impact that would have had on the immigration judge's decision. And then regarding materiality, I believe your honors had questioned, or had inquired whether or not there was a materiality argument raised. So in the brief to the board, Petitioner had not raised a materiality argument, and perhaps that's where there's an issue that the board felt compelled to address it, but all the concerns that the court has raised, the ambicus has raised, the Petitioner has raised, have not been clearly explored by the agency just because that claim was not preserved. And then now before this court, in Petitioner's brief, it was not clear that he was explicitly testing or pushing the boundaries whether or not the misrepresentation was material. The focus of the brief there was whether or not the agency had properly denied the 212I application. And so, again, upon initial briefing, materiality wasn't discussed at length, but it was more done so in the context of the supplemental briefs. So I gather, though, that since the BIA addressed the issue in footnote one of its ruling, that government is not really pressing its claim. Not pressing the failure to exhaust claim, and we iterate that in our brief as well. It's just more before this court, too, whether or not he has preserved the claim, and to what extent, as the arguments section of the brief pertains primarily to the 212I waiver. How do we assess the import of state law versus federal law? So in this case, right, there's much about what Connecticut law has to say about the age of consent and the age of majority in Connecticut. If you look across the spectrum of state laws, are they the same? How does the federal government make a determination, since immigration is federal law preempts state law? As I'm sure your Justices are well aware, it's a very complex legal analysis. That's why I'm asking. And we could spend hours here trying to figure that out. It's different in this case to the extent that he was not charged, as Petitioner's Counsel pointed out, with removability or admissibility for a crime or for a conviction. Here it's more to do with discretion. So there's not necessarily such a state-specific legal analysis that is invoked in here, more as what are just the general facts and factors underlying the criminal proceedings? If that answers your question, Your Honor. I see I have one minute remaining. Do the Justices have any further questions, or may I briefly conclude? Let me ask you a question about whether adultery can be considered as a negative factor, looking at the various amendments and so forth. So as the Court asked the parties and the amicus to analyze Yepes Prado, one of the amendments in that case was the abolition or the per se bar of a per se bar of good moral character finding based upon adultery. However, it was just a per se, and it can be considered on a case-by-case basis as well as it pertains to discretionary determination. So you've got the policy manual of USCIS, which says that adultery may be a basis for finding a lack of good character. And then that policy volume 12, Part F, Chapter 5, the manual cites 8 CFR, Section 316.10B332, but that section doesn't reference adultery. I have not taken such a close look at that policy memorandum, and I would be happy to do so and get back to you with the government's position in further regard. But based upon the government's analysis of Yepes Prado, and as Your Honor spoke, it seems permissible for the agency to consider adultery. Again, not as a per se bar of good moral character. And with that, I just want to note that the good moral character determination goes more so to statutory eligibility and not to discretionary. Discretionary point, yeah. Yes, Your Honors. So with that, the government would just like to reaffirm that Petitioner has not met his burden for adjustment of status. He willfully misrepresented material information under oath. And for that reason, he should be denied adjustment of status. Thank you, Your Honors. Thank you for your arguments. Sorry for my sore throat. Thank you. Thank you all. The Court will reserve decision. The Clerk will adjourn Court.